IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CLOUD 1 SERVICES, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>THE BOARD OF ADJUSTMENT OF<br>MADISON COUNTY and MADISON<br>COUNTY,<br><br>        Defendants. | **No. 4:20-cv-00281-RGE-RAW**<br><br><br>**ORDER GRANTING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff Cloud 1 Services, LLC, sues Defendants the Board of Adjustment of Madison County and Madison County for violations of the Telecommunications Act of 1996 (the Act). Cloud 1 moves for summary judgment, arguing it is entitled to judgment as a matter of law under 47 U.S.C. § 332(c)(7)(B) because, contrary to the Act's requirements, the Board of Adjustment failed to timely provide written reasons for denying Cloud 1's conditional use permit applications to build cellular towers at two sites in Madison County. Cloud 1 further argues it is entitled to judgment as a matter of law because the written record does not contain substantial evidence supporting the Board of Adjustment's written reasons. Cloud 1 requests the Court issue an injunction directing the Board of Adjustment to grant its applications. Defendants resist. Defendants argue even if the Court finds they violated the Act, the appropriate remedy is to remand the matter back to the Board of Adjustment.[1]

---

[1] Defendants argue Madison County is an improper party because under Iowa law the Board of Adjustment has sole power to grant conditional use permits. Defs.' Br. Supp. Resist. Pl.'s Mot. Summ. J. 3 n.3, ECF No. 26-2 (citing Iowa Code § 335.10 and *Holland v. City Council of Decorah*, 662 N.W.2d 681 (Iowa 2003)). Thus, Defendants argue the Court should dismiss Madison County.

The record undoubtedly demonstrates there are community members opposed to the proposed cellular towers. However, the question before the Court is not the level of local support for the cellular towers. The Act requires the Court to determine whether the record supports the Board of Adjustment's decision to deny conditional use permit applications under the applicable local law. The record lacks such support. For the reasons set forth below, the Court grants Cloud 1's motion and orders Cloud 1's requested relief.

## II.   BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to the Board of Adjustment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); Defs.' Resp. Pl.'s Statement Material Facts, ECF No. 26-1; Pl.'s App. Supp. Mot. Summ. J., ECF Nos. 24-3 to 24-18; Pl.'s Suppl. App. Supp. Mot. Summ. J., ECF No. 27-1.

Cloud 1 Services is a wireless infrastructure provider. ECF No. 26-1 ¶ 1. Cloud 1 works with wireless communications carriers to develop wireless networks. *Id.* As a wireless infrastructure provider, Cloud 1 creates and maintains digital "cell sites" for wireless communications carriers. *Id.* ¶ 3. A cell site is comprised of antennas and "related electronic communications equipment designed to send and receive radio communications signals." *Id.* ¶ 4. Wireless devices operate by transmitting radio signals to antennas at cell sites. *See id.* ¶ 7. Cell sites are constructed within specific geographic areas to provide service to consumers within that area. *See id.* ¶¶ 10–11. Wireless communications carriers complete a propagation study to

---

*Id.* Cloud 1 does not respond to Defendants' argument. *See* Pl.'s Reply Br. Supp. Mot. Summ. J., ECF No. 27. Because the Board of Adjustment is the only authority charged with considering the conditional use permit applications at issue, the Court dismisses Madison County as a defendant in this matter. The Court considers Cloud 1's motion for summary judgment only as to the Board of Adjustment.

determine where to locate cell sites. *Id.* ¶ 12.

The Madison County Zoning Ordinance sets forth the permitted uses of land and structures within each zoning district. *See id.* ¶ 17 (citing Madison County Zoning Ordinance § 14E); *see also* ECF No. 24-5 at 54–59 (Madison County Zoning Ordinance § 14E). "There are occasions when . . . conditional uses may be allowed after careful consideration of the impact of the particular uses upon the neighborhood and public facilities." ECF No. 24-5 at 54. To obtain a conditional use permit—also known as a special use permit—an applicant must first apply to the Madison County Zoning Commission. ECF No. 26-1 ¶ 20 (citing Madison County Zoning Ordinance § 14F(f)); *see also id.* ¶ 19. The Zoning Commission then considers the application at a public hearing. *Id.* ¶ 21 (citing Madison County Zoning Ordinance § 14F(f)). After the hearing, the Zoning Commission submits a report regarding its findings and recommendations on the conditional use permit application to the Board of Adjustment. *Id.* ¶ 22 (citing Madison County Zoning Ordinance § 14F(f)). Then the Board of Adjustment holds a public hearing. *See* ECF No. 24-5 at 60 (Madison County Zoning Ordinance § 14F(f)). The Board of Adjustment may authorize conditional uses "after careful consideration of the impact of the particular uses upon the neighborhood and public facilities therein." *Id.* at 54; ECF No. 26-1 ¶ 18.

To grant a conditional use permit, the Board of Adjustment must find the application meets six conditions set forth in § 14F(a) of the Zoning Ordinance:

    i.  Surrounding Area. The value and qualities of the area (or neighborhood) surrounding the conditional use are not substantially injured, and the establishment of a special use will not impede the normal and orderly development and improvement of surrounding undeveloped property for uses predominant in the area. In reviewing and acting upon each application for a special use permit, the Board shall each give due consideration to the proximity of the proposed use to public parks, schools, licensed day care facilities, dwellings and residential districts.

   ii.  Infrastructure. Adequate utilities, access roads, drainage, and other necessary facilities have been or are being provided.

3

iii. Intent of Ordinance. The special use is consistent with the intent and purpose of this Ordinance to promote public health, safety, and general welfare.

iv. Nuisance Factors. Adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise, and vibration, so that none of these will constitute a nuisance and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result.

v. Comprehensive Plan. The special use is not inconsistent with the comprehensive plan and land use policies of the County.

vi. Cumulative Impact. The Board shall make a determination that the proposed use would not cause a significant adverse cumulative impact when considered together with other uses previously permitted by special use permit. While the impact of a single use permitted by conditional use permit may be deemed acceptable by the Board, the location of more than one conditional use in close proximity to another conditional use may have the potential of causing a significant adverse cumulative impact in the neighborhood.

ECF No. 24-5 at 59–60 (Madison County Zoning Ordinance § 14F(a)(i–vi)); *see also* ECF No. 26-1 ¶ 30.

On May 26, 2020, Cloud 1 submitted conditional use permit applications for proposed cellular towers at two locations in Madison County. ECF No. 26-1 ¶ 34. Cloud 1 sought to install a 300-foot cellular tower on the "Winterset Site"—a 100-square-foot lease area of property zoned for agricultural uses in Jackson Township. *Id.* ¶¶ 31, 34, 36. Cloud 1 also sought to install a 300-foot cellular tower on the "Macksburg Site"—a 100-square-foot lease area of property zoned for agricultural uses in Monroe Township. *Id.* ¶¶ 32, 34, 35. The cellular towers were to support "AT&T's wireless voice and data communications services, including its FirstNet emergency communications first-responder network . . . ." *Id.* ¶ 37. The network would be available to first responders if their emergency services agencies subscribed to FirstNet's service. Bd. of Adjustment Hr'g Tr. 43:20–44:2, ECF No. 24-7 at 183–84.

The Zoning Administrator's staff reviewed the applications and issued reports to the Zoning Commission. *See* ECF No. 26-1 ¶ 40; ECF No. 24-5 at 77–82 (Zoning Administrator

Reports). The Zoning Administrator Reports concluded that both applications met all the requirements of the Madison County Zoning Ordinance and recommended the Zoning Commission approve Cloud 1's conditional use permit applications for the Winterset Site and the Macksburg Site. ECF No. 26-1 ¶¶ 40, 42; ECF No. 24-5 at 79, 82.

On July 16, 2020, the Zoning Commission considered the applications at a public hearing. ECF No. 26-1 ¶ 45. At the hearing, community members spoke out in opposition to the cellular towers. *See id.* ¶ 48; *see also* Zoning Comm'n Hr'g Tr. 3:5–5:22, ECF No. 24-6 at 90–92; ECF No. 24-6 at 132–34 (petitions opposing proposed cellular tower at Winterset Site). Community members expressed a variety of concerns about the cellular towers, including purportedly negative health effects, aesthetics, property values, and affected roads. ECF No. 26-1 ¶¶ 48–49; ECF No. 24-6 at 110–12 (Zoning Commission Hearing Minutes). Community members also wrote letters in opposition to the cellular towers. The Zoning Commission received nine letters opposing the conditional use permit at the Winterset Site and one letter in opposition to the Macksburg Site. *See* ECF No. 24-6 at 125–31, 135–40. Forty-one community members also signed petitions opposing the cellular tower at the Winterset Site. *Id.* at 132–34. Despite the Zoning Administrator Reports finding Cloud 1's applications met all the requirements of the Madison County Zoning Ordinance, the Zoning Commission voted to recommend the Board of Adjustment deny both applications. ECF No. 26-1 ¶ 51; ECF No. 24-6 at 112; *see also* ECF No. 24-6 at 115, 118. The Zoning Commission did not provide written reasons supporting the denials. ECF No. 26-1 ¶ 83; *see also* ECF No. 24-8 at 267.

On August 4, 2020, the Board of Adjustment held public hearings on the applications for conditional use permits for the Winterset and Macksburg Sites. ECF No. 26-1 ¶ 53. For its consideration, the Board of Adjustment had the Zoning Administrator Reports, which stated the Winterset and Macksburg Sites met all requirements of the Madison County Zoning Ordinance,

the Zoning Commission's recommendation to deny the applications, letters and petitions from community members, and Impact Reports submitted by the Madison County Engineer. *See* ECF No. 26-1 ¶ 65; *see also id.* ¶¶ 59–64; Bd. of Adjustment Hr'g Tr. 24:8–10, ECF No. 24-7 at 164 (noting the Zoning Commission and Board of Adjustment received every document received by the Zoning Administrator). The Madison County Engineer's Impact Reports assessed the impact the cellular towers, if approved, would have on the secondary roads. ECF No. 24-6 at 119–122 (Impact Reports). The reports found the proposed cellular towers "should have little, if any, impact, on the Madison County Secondary Road System." ECF No. 26-1 ¶ 64; ECF No. 24-6 at 120, 122. Community members' letters opposed the conditional use permits for both Sites and included a petition opposing the conditional use permit for the Winterset Site. *See* ECF No. 24-6 at 125–40; Bd. of Adjustment Hr'g Tr. 24:8–10, ECF No. 24-7 at 164.

The Board of Adjustment first considered the Winterset Site application. The Board of Adjustment opened the hearing as to the conditional use permit application for the Winterset Site at 7:04 p.m. *See* Bd. of Adjustment Hr'g Tr. 5:2–10, ECF No. 24-7 at 145. The Zoning Administrator addressed the Board of Adjustment first, summarizing the Zoning Administrator Report findings and Zoning Commission hearing on the Winterset Site. *Id.* at 5:10–9:14; *see also* ECF No. 24-8. The Zoning Administrator noted the Zoning Administrator Report recommended approving the conditional use permit application. Bd. of Adjustment Hr'g Tr. 7:21–23, ECF No. 24-7 at 147. He explained his staff consulted with the Madison County Assessor's office as to whether the Assessor's office had noticed any impact on property values for properties located near existing cellular towers. *Id.* at 8:9–13. The Assessor's office indicated it had noted no such decrease in property values. *Id.* at 8:13–14. The Zoning Administrator also noted he did not receive a report from the Madison County Conservation Board or the Board of Health. *Id.* at 9:9–22.

The Board then heard comments from Cloud 1's representative. The representative

summarized the purpose of the proposed cellular tower was to facilitate a dedicated first responder subscriber network. *Id.* at 14:10–20. The representative remarked that Cloud 1 had approval for some secondary roads to access the proposed Sites. *Id.* at 15:4–5. She further noted Cloud 1 had obtained Federal Aviation Administration approval for the proposed tower at the Winterset Site. *Id.* at 15:5–6. Finally, the representative explained a new tower for the first responder network was necessary because there were no other structures within the required area that could be used for collocation. *Id.* at 15:8–20.

Members of the public spoke next. They expressed various concerns regarding adverse effects on health, aesthetics, property values, roads, WiFi reception, local airstrips and planes, and residents' lifestyles, among other concerns. ECF No. 26-1 ¶ 68. Several testifying members of the public owned property near the Winterset Site, which is zoned for agricultural use. *See, e.g.*, Bd. of Adjustment Hr'g Tr. 16:22–18:4, ECF No. 24-7 at 156–58. The members of the public who spoke at the hearing unanimously opposed a cellular tower at the Winterset site. *See, e.g.*, *id.* at 98:16–20. At 9:17 p.m., after approximately two hours, a member of the Board of Adjustment moved to close the public hearing as to the Winterset Site. *Id.* at 106:16–22, 107:8–12. After the hearing was closed, Board member William Manning moved to deny Cloud 1's application for a conditional use permit at the Winterset Site. *Id.* at 107:14–16. Before moving forward with the vote, Board member Mindy Nelson asked if the other Board members believed each subsection of Madison County Zoning Ordinance § 14F was addressed or if further discussion was needed. *Id.* at 107:22–108:9, 20. The Board members agreed no further discussion was needed. *See id.* at 108:10–14. The Board members voted unanimously to deny the conditional use permit application for the Winterset Site. *See* ECF No. 24-12 at 292–93 (Board of Adjustment Decision).

At 9:26 p.m.—minutes after denying the application for the Winterset Site—the Board of Adjustment opened the public hearing on the conditional use permit application for the Macksburg

Site. Bd. of Adjustment Hr'g Tr. 111:10–112:1, ECF No. 24-7 at 251–52. Similar to the hearing

on the Winterset Site, the Zoning Administrator spoke first, reviewing the Zoning Administrator

Report finding that the application met all of the Madison County Zoning Ordinance requirements

and summarizing the Zoning Commission recommended denial of the permit. *Id.* at 112:5–113:15.

The Board of Adjustment then heard from Cloud 1's representative again. She indicated Cloud 1

received secondary road approval for the Site. *Id.* at 113:17–114:1. She also noted the access road

required a culvert and indicated Cloud 1 would consider that during construction. *Id.* at 114:2–7.

Finally, three members of the public addressed the Board of Adjustment. *See id.* at 114:10–116:15.

A landowner near the Macksburg Site expressed concerns about the proposed access road.

*Id.* at 114:12–22. Another member of the public recommended "the Board take a look at everything

that was said about the [Winterset] Site"—"[a]ll the health issues," "environmental issues," and

"all the land value issues"— to make its decision on the Macksburg Site. *Id.* at 115:11–16. And,

finally another nearby property owner expressed his opposition. *Id.* at 116:1–15. The Board of

Adjustment members then voted to close the public hearing. *Id.* at 117:1–11. At 9:35 p.m., the

public hearing for the Macksburg Site was closed—nine minutes after it began. *Id.* at 117:7–11.

The Board of Adjustment members voted unanimously to deny the conditional use permit

application for the Macksburg Site. ECF No. 24-16 at 318–19 (Board of Adjustment Decision).

The Board of Adjustment members recorded their denials for the Winterset and Macksburg

Sites on documents titled "Board of Adjustment Findings of Fact and Legal Principles upon

which the Board Acts" ("Initial Findings of Fact"). ECF No. 24-8 at 271 to 24-12 at 287;

ECF Nos. 24-13 to 24-16 at 297–317. The documents set forth § 14 and § 17D of the Madison

County Zoning Ordinance. *See id.* After providing the relevant law, each document concluded

with the following statement:

After careful consideration of all the information that has been presented, and for

the factual reasons set forth in the above noted Sections 14 & 17 both of which are incorporated by this reference herein, the Board of Adjustment hereby finds:

The applicant . . . on behalf of [the property owner] for FirstNet-AT&T request for Conditional Use Permit has ____/ has not _x_ met the requirements of the Madison County Zoning Ordinance.

*See, e.g.*, ECF No. 24-9 at 274. Documents entitled "Decision" indicated that "The Conditional Use request was . . . denied" for each of the Sites (the "Denials"). ECF No. 24-12 at 292–93; ECF No. 24-16 at 318–19. The Denials identified the hearing date and time, the property at issue, and the individual members' votes. ECF No. 24-12 at 292–93; ECF No. 24-16 at 318–19. The Denials also declared the Board of Adjustment "reviewed the relevant provisions of the Madison County Ordinances, all documents constituting the record, any new documents" and heard the statements of the applicants, the Zoning Administrator, and those in attendance at the hearing. ECF No. 24-12 at 292–93; ECF No. 24-16 at 318–19.

Cloud 1 filed a complaint in this Court on September 3, 2020. Compl., ECF No. 1. Cloud 1 alleges two claims under the Act and one claim under Iowa law. *Id.* In its first claim, Cloud 1 alleges the Board of Adjustment failed to provide a written record of the substantial evidence supporting the Denials in violation of the Act, 47 U.S.C. § 332(c)(7)(B)(iii). *Id.* ¶¶ 45–48. In its second claim, Cloud 1 alleges the Board of Adjustment's denial of the Winterset and Macksburg Sites conditional use permit applications effectively prohibited the provision of personal wireless services in violation of the Act, 47 U.S.C. § 332(c)(7)(B)(i)(II). *Id.* ¶¶ 49–54. Finally, in its third claim, Cloud 1 sets forth a petition for certiorari under Iowa law for the Board of Adjustment's alleged violation of the Iowa Cell Siting Act, Iowa Code ch. 8C. *Id.* ¶¶ 55–60. Among the relief requested, Cloud 1 requests the Court issue an order declaring the Board of Adjustment violated the Act and an injunction directing the Board to grant the conditional use permit applications for the Winterset and Macksburg Sites. *Id.* ¶¶ 60B, 60D.

Approximately two weeks after Cloud 1 filed suit, the Board of Adjustment provided Cloud 1 supplemental "Board of Adjustment Written Findings of Fact and Legal Principles upon which the Board Acts" ("Supplemental Findings of Fact") for each Site. ECF No. 26-1 ¶ 84; ECF No. 24-12 at 294–96; ECF No. 24-16 at 320–22. The Supplemental Findings of Fact were dated September 15, 2020—forty-two days after the Board of Adjustment issued the Denials of Cloud 1's conditional use permit applications. ECF No. 24-12 at 294–96; ECF No. 24-16 at 320–22. Like the Initial Findings of Fact signed on August 4, 2020, the supplemental version recites § 14 of the Zoning Ordinance. ECF No. 24-12 at 294–96; ECF No. 24-16 at 320–22. The Supplemental Findings of Fact further provide the Board "heard comment from residents expressing opposition to the request regarding property values, health concerns from the proposed project, and negative impact on the roads during construction, as well as other issues and concerns." ECF No. 24-12 at 295; ECF No. 24-16 at 321. The Supplemental Findings of Fact for each Site conclude as follows:

> After careful consideration of all the information presented by the zoning administrator, Cloud 1 Services LLC, on behalf of FirstNet & AT&T, and evidence presented at the public hearing, the Board finds and concludes that the request is not consistent with the intent and purpose of the Madison County Comprehensive Plan and Zoning Ordinance. It further finds and concludes that this request does not promote the public health, safety and general welfare of the citizens of Madison County. The surrounding area and the values and quality of the neighborhood may be injured if this conditional use permit were approved and with consideration given to the recommendation by the Madison County Zoning Commission to deny the request by unanimous decision at its July 16, 2020 meeting/hearing. Therefore, after consideration of all these factors, which are incorporated by reference herein, the Board of Adjustment hereby finds and concludes: The applicant request for Conditional Use permit has not met the requirements of the Madison County Zoning Ordinance.

ECF No. 24-12 at 296; ECF No. 24-16 at 322.

Cloud 1 now moves for summary judgment, arguing it is entitled to judgment as a matter

of law on Count I for two reasons.[2] *See* ECF No. 24 ¶¶ 4–6, 8; *see also* Pl.'s Br. Supp. Mot. Summ. J. 5–23, ECF No. 24-2. First, Cloud 1 argues the Board of Adjustment failed to timely provide Cloud 1 its purported reasons for the Denials of the conditional use permit applications for the Sites. *See* ECF No. 24 ¶ 5; ECF No. 24-2 at 5–9. Second, Cloud 1 argues the Board of Adjustment's Denials were not supported by substantial evidence contained in a written record as required by the Act. ECF No. 24 ¶ 6; ECF No. 24-2 at 9–23. The Board of Adjustment resists. ECF No. 26-2; *see also* Defs.' Br. Supp. Resist. Pl.'s Mot. Summ. J., ECF No. 26-2. The Court decides the motion without oral argument, finding the parties' briefing and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). Having reviewed the parties' briefing and exhibits, the Court now addresses Cloud 1's motion for summary judgment.

Additional facts are set forth below as needed.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only

---

[2] Cloud 1 does not expressly limit its motion for summary judgment to Count I. *See* ECF No. 24. However, Cloud 1 only argues it is entitled to summary judgment on Count I. *See* ECF No. 24-2 at 5–23. It appears Cloud 1 limits its arguments to Count I because that claim seeks injunctive relief. *See id.* at 4 ("Cloud 1 respectfully asks this Court to grant summary judgment in its favor and order the County to issue all necessary permits and approvals."). Injunctive relief in the form of ordering the Board of Adjustment to grant Cloud 1's conditional use permit applications would moot Cloud 1's claims in Counts II and III. Because Cloud 1 does not address Counts II and III in its motion for summary judgment, the Court considers Cloud 1's motion according to its substance—as a motion for summary judgment on Count I only. *See* ECF No. 24-2 at 5–23; *Est. of Snyder v. Julian*, 789 F.3d 883, 886 (8th Cir. 2015) (explaining "captions do not control" a court's construction of a motion (internal quotation marks and citation omitted)).

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Where there is a genuine dispute of facts, those "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

To defeat a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (omission in original) (internal quotation marks omitted) (quoting a prior version of Fed. R. Civ. P. 56(e)). In analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci*, 557 U.S. at 586).

### B.  Telecommunications Act of 1996

"The Telecommunications Act of 1996 provides . . . that '[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.'" *T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293, 295 (2015) (alteration in original) (quoting 47 U.S.C. § 332(c)(7)(B)(iii)). The Act "generally preserves the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers, but imposes specific limitations on that

authority." *Id.* at 300 (internal quotation marks omitted) (quoting *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005)). One limitation is the requirement that a locality's decision denying a request to build a tower be "in writing and supported by substantial evidence contained in a written record." *Id.* (internal quotation marks omitted) (quoting 47 U.S.C. § 332(c)(7)(B)(iii)). Another limitation is "that parties adversely affected by a locality's decision may seek judicial review." *Id.* (citing 47 U.S.C. § 332(c)(7)(B)(v)).

A locality must provide written reasons to enable a party to seek judicial review under the Act. *Id.* Written reasons enable a reviewing court "to identify the reason or reasons why the locality denied the application" so it can determine "whether a locality's denial was supported by substantial evidence." *Id.* However, a locality's reasons for its denial do not have to be in the written notice or letter of denial. *Id.* at 295. "Instead, the locality's reasons may appear in some other written record so long as the reasons are sufficiently clear." *Id.*

To determine whether a locality's decision is supported by substantial evidence, courts apply the "traditional standard used for judicial review of agency determinations." *Sprint Spectrum, L.P. v. Platte Cnty., Mo.*, 578 F.3d 727, 733 (8th Cir. 2009). "[T]he substantial evidence standard is essentially deferential . . . ." *Id.* at 734 (internal quotation marks and citation omitted). In applying the substantial evidence standard, the Court "cannot substitute [its] determination for that of the administrative fact-finder just because [it] believe[s] that the fact-finder is . . . wrong." *Id.* at 733 (internal quotation marks and citation omitted). The Court must affirm the Board's decision "[i]f the Board's findings are supported by some substantial level of evidence (but less than a preponderance) on the record as a whole . . . so that a reasonable fact-finder could reach the same conclusion" as the Board. *Id.* (internal quotation marks and citation omitted). The "possibility of drawing two inconsistent conclusions from the evidence" does not necessitate finding a locality's decision is not supported. *Id.*

"The [Act]'s substantial evidence requirement does not impose substantive standards on local governments. Rather, it requires a reviewing court to determine whether the local authority's decision comports with applicable local law." *NE Colo. Cellular, Inc. v. City of N. Platte, Neb.*, 764 F.3d 929, 936 (8th Cir. 2014) (internal quotation marks and citation omitted). "[T]he burden is on the party seeking to overturn the Board's decision . . . to show that the decision is not supported by substantial evidence." *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment of the City of Des Moines*, 465 F.3d 817, 821 (8th Cir. 2006).

## IV.   DISCUSSION

Cloud 1 moves for summary judgment on Count I. Cloud 1 argues the Board of Adjustment violated 47 U.S.C. § 332(c)(7)(B) when it denied the conditional use permit applications for the Winterset Macksburg Sites because it failed to timely provide written reasons for the Denials and the Denials were not supported by substantial evidence in the record. ECF No. 24 ¶¶ 4, 6. Additionally, although in its motion Cloud 1 states there are two grounds for summary judgment, in its brief, Cloud 1 also argues the Supplemental Findings of Fact fail to satisfy the Act's "in writing" requirement by failing to provide sufficiently clear reasons to support the Board of Adjustment's Denials. ECF No. 24-2 at 7–9.

The Board of Adjustment does not respond to Cloud 1's timeliness argument but contends substantial evidence in the record supports the Denials. ECF No. 24 ¶ 1; ECF No. 26-2 at 3–15. The Board of Adjustment argues if the Court finds it violated the Act, the appropriate remedy is to remand back to the Board of Adjustment "for the creation of appropriate findings." ECF No. 26-2 at 15.

For the reasons discussed below, the Court finds the Board of Adjustment violated the Act by failing to timely provide its written reasons for denying Cloud 1's conditional use permit applications. The Court finds the Board of Adjustment's Supplemental Findings of Fact satisfy the

"in writing" requirement. The Court also finds the record lacks substantial evidence to support the Board of Adjustment's Denials of Cloud 1's conditional use permit applications. Cloud 1 is therefore entitled to summary judgment. Because the Act provides for expedited review and remand will not remedy the issues with the Board of Adjustment's record, the Court finds injunctive relief is appropriate.

### A.    Timeliness

Cloud 1 argues the Board of Adjustment violated the Act by not providing Cloud 1 with the Supplemental Findings of Fact until twelve days after the deadline for Cloud 1 to seek judicial review. ECF No. 24-2 at 5, 8. The Court considers the Act's timeliness requirement as explained by the United States Supreme Court in *T-Mobile South v. City of Roswell, Georgia*. 574 U.S. 293. The Court finds the Board of Adjustment violated the Act by failing to provide Cloud 1 written reasons "essentially contemporaneously" with its decisions to deny conditional use permit applications for the Winterset and Macksburg Sites. *Cf. id.* at 295. Thus, Cloud 1 is entitled to judgment as a matter of law on this ground.

In *Roswell*, the Supreme Court considered when a locality must provide written reasons for denying a request to build a cell tower so as to enable judicial review. In *Roswell*, the City failed to provide T-Mobile South with written reasons for denying its application to build a cell tower until twenty-six days after the City issued its written denial. *Id.* at 297–98. At that time, the City provided detailed meeting minutes. *Id.* In considering the timing of the written reasons, the Supreme Court concluded the writing containing the locality's reasons for its denial must be "provided or made accessible to the applicant essentially contemporaneously with the written denial letter or notice," to facilitate the judicial review the Act provides. *Id.* at 295; *see* 47 U.S.C. § 332(c)(7)(B)(v). Ultimately, the Supreme Court determined the City did not comply with its obligations under the Act when it issued "detailed minutes [twenty-six] days after the date of the

written denial and just [four] days before" the expiration of T-Mobile South's time to seek judicial review. 574 U.S. at 307–08.

Here, as in *Roswell*, the Board of Adjustment failed to provide Cloud 1 written reasons for denying Cloud 1's applications for conditional use permits "essentially contemporaneously" with the Board of Adjustment's Denials. *Cf. id.* at 295. The Board of Adjustment issued the Denials of Cloud 1's applications on August 4, 2020, immediately after the public hearing for both Sites. ECF No. 26-1 ¶ 79. The Denials and accompanying Initial Findings of Fact do not state the Board of Adjustment's reasons for denying conditional use permit applications for either Site. *See* ECF No. 24-11 at 288 to ECF No. 24-12 at 293 (setting forth the relevant sections of the Madison County Zoning Ordinance the Board of Adjustment applies to determine whether to grant an application for a conditional use permit); ECF No. 24-15 at 314 to ECF No. 24-16 at 319 (same). The Board of Adjustment did not provide the reasons for the Denials until September 15, 2020—forty-two days after issuing them—when it issued its Supplemental Findings of Fact. *See, e.g.*, ECF No. 24-16 at 320–22. The defendant in *Roswell* provided written reasons twenty-six days after denying plaintiff's application and within the thirty-day window for seeking judicial review. 574 U.S. at 307–08. The Board of Adjustment's delay exceeds the untimely submission in *Roswell* and was after the deadline for seeking judicial review. *Cf. id.* at 298, 307–08. The Board of Adjustment failed to meet its statutory obligations under the Act to provide written reasons essentially contemporaneously with the Denials of Cloud 1's conditional use permit applications for the Winterset and Macksburg Sites. *Cf. id.* 295, 298, 308.

Considering the record as a whole and viewing the evidence in the light most favorable to the Board of Adjustment, the Board of Adjustment's submission to Cloud 1 of the written reasons for denying the conditional use permit applications was untimely in violation of the Act. The Court grants Cloud 1's motion for summary judgment on this ground.

16

B.        In Writing

To satisfy the Act's "in writing" requirement "localities must provide reasons when they deny cell phone tower siting applications. . . . [H]owever, . . . these reasons need not be elaborate or even sophisticated, but . . . simply clear enough to enable judicial review." *Roswell*, 574 U.S. at 302. In *Sprint Spectrum, L.P. v. Platte County, Missouri*, the Eighth Circuit examined the "in writing" requirement. 578 F.3d at 732–33. The court considered that local boards are "primarily staffed by laypeople" and "it is not realistic to expect highly detailed findings of fact and conclusions of law." *Id.* at 732. The locality's decision explained it opposed the cellular tower because its "size, location, and relationship to the surrounding screening and landscaping were such that the tower would dominate the immediate neighborhood so as to prevent development and use of neighboring property." *Id.* at 732. The court determined the locality's explanation was sufficient to permit meaningful review of whether the record contained substantial evidence to support the decision. *Id.*

Here, in its Supplemental Findings of Fact, the Board of Adjustment states it heard "comment from residents expressing opposition to the request regarding property values, health concerns . . . , and negative impact on the roads during construction, as well as other issues and concerns." ECF No. 24-12 at 295; ECF No. 24-16 at 321. The Board of Adjustment does not specifically identify the subsections of the Madison County Zoning Ordinance the conditional use permit applications do not meet. However, its conclusion indicates Cloud 1's application did not meet three of the six conditions identified in § 14F. The Board of Adjustment concluded: the request is "not consistent with the intent and purpose of the Madison County Comprehensive Plan and Zoning Ordinance;" "does not promote the public health, safety and general welfare of the citizens of Madison County;" and "may injure" the "surrounding area and the values and quality of the neighborhood." ECF No. 24-12 at 296; ECF No. 24-16 at 322. The Board of Adjustment

further states it considered the Zoning Commission's recommendation to deny the request. ECF No. 24-12 at 296; ECF No. 24-16 at 322.

As in *Sprint Spectrum*, the Court considers the Board of Adjustment's reasoning with the understanding that detailed findings of fact are not necessary. *Cf.* 578 F.3d at 732. The Board's Supplemental Findings of Fact sufficiently indicate reasons the applications were denied—they failed to meet three of the six conditions set forth in § 14F: § 14F(a)(i) "Surrounding Area;" § 14F(a)(iii) "Intent of Ordinance;" and § 14F(a)(v) "Comprehensive Plan." *See* ECF No. 24-12 at 295–96; ECF No. 24-16 at 321–22. Unlike the Initial Findings of Fact which merely set forth the applicable law, the Supplemental Findings of Fact include reference to which portions of § 14F serve as the basis for the Board of Adjustment's Denials. The Board of Adjustment also lists the broad topics of testimony from members of the public that it considered. *See* ECF No. 24-12 at 295–96; ECF No. 24-16 at 321–22. From the reasons in the Supplemental Findings of Fact, the Court can review the record to determine whether substantial evidence in the record supports the Denials. *Cf. Sprint Spectrum*, 578 F.3d at 732. The Board of Adjustment has satisfied the Act's "in writing" requirement. Thus, summary judgment is not appropriate as to the "in writing" requirement of the Act to the extent Cloud 1 seeks summary judgment on this ground.

## C.   Substantial Evidence

Cloud 1 argues summary judgment is proper because the Board of Adjustment's untimely written reasons for denying the conditional use permit applications for the Winterset Site and Macksburg Site are not supported by substantial evidence in the record. ECF No. 24-2 at 9. Cloud 1 contends the conditional use permit applications meet all of the conditions set forth in § 14F of the Madison County Zoning Ordinance, as recognized by the Zoning Administrator Report. *See id.* at 11–23. The Board of Adjustment cites various testimony from the public hearings on both

conditional use permit applications to argue the record contains substantial evidence supporting the Denials. ECF No. 26-2 at 4–12. Cloud 1 replies even if the testimony from the public hearings constitutes substantial evidence, it is only sufficient to support the Board of Adjustment's decision as to the Winterset Site because the public hearing on the Macksburg Site featured less testimony and was significantly shorter than the Winterset Site hearing. ECF No. 27 at 1–2.

The substantial evidence standard "requires a reviewing court to determine whether the local authority's decision comports with applicable local law." *NE Colo. Cellular, Inc.*, 764 F.3d at 936. The question is not whether the local authority's decision is supported by local residents. To determine whether the Board of Adjustment's reasons for denying Cloud 1's conditional use permit applications comport with the Madison County Zoning Ordinance, the Court identifies the Board of Adjustment's written reasons and the portions of the Madison County Zoning Ordinance those reasons implicate. The Court then examines the written record in light of the relevant sections of the Madison County Zoning Ordinance to determine whether there is substantial evidence from which a reasonable fact finder could reach the same conclusion as the Board of Adjustment.

Eighth Circuit cases applying the Act's substantial evidence standard are instructive. In *NE Colorado Cellular v. City of North Platte, Nebraska*, the Eighth Circuit found the City of North Platte's denial of a conditional use permit was supported by substantial evidence. 764 F.3d at 937. The plaintiff, a cell-tower hopeful, applied to the defendant, the City of North Platte, Nebraska, for a permit to install a 100-foot telecom tower. *Id.* at 931. The North Platte Code of Ordinances required that conditional uses must "be in harmony with the character of the area and the most appropriate use of the land." *Id.* (internal quotation marks and citation omitted). The City Planning Commission held a public hearing on the plaintiff's application and received live testimony and letters from property owners. *Id.* The Commission then issued a summary report to the City

Council recommending the City Council deny the application "because the tower would not be in harmony with the character of the area," as required under the North Platte Code of Ordinances. *Id.* The City Council then held a public hearing wherein twelve residents testified that the tower was not appropriate for the historic neighborhood, could decrease the property values of surrounding homes, could be dangerous to the public, and would be "an eyesore." *Id.* The City Council concluded the proposed use was "not in harmony with the character of the area and it [was] not the most appropriate use of the land as it [was] a historic neighborhood and the tower could decrease property values in the area." *Id.* The disappointed cell-tower proponent sued the City, alleging the City Council's decision was not supported by substantial evidence contained in the written record as required by the Act. *Id.* at 931–32. The district court found there was substantial evidence to support denying the application on the ground that the tower would not be in harmony with the character of the historic neighborhood, as required by the zoning ordinance. *See id.* at 932. The Eighth Circuit determined the testimony of a dozen residents indicating the tower would be inharmonious and inappropriate for the neighborhood was sufficient evidence. The court found the testimony, "[i]n the context of a zoning decision . . . [was sufficient] for a reasonable mind to accept as adequate to support a conclusion" the proposed tower did not comply with the Ordinances' requirement that conditional use be in harmony with the character of the area. *Id.* at 937 (internal quotation marks and citation omitted). Thus, the court concluded the City Council's denial was supported by substantial evidence. *Id.*

Similarly, in *Smith Communications v. Washington County, Arkansas*, the Eighth Circuit determined that the Quorum Court of Washington County's denial of a conditional use permit application to install a 300-foot cell tower was supported by substantial evidence. 785 F.3d 1253, 1258–60 (8th Cir. 2015). In *Smith*, the Quorum Court held multiple meetings during which members of the public, and other meeting participants, discussed concerns about the proposed cell

tower, including potential safety issues, the placement and proximity of the tower to residences, the fit with the surrounding area, the tower's impact on views and property values, and the requirements of the zoning code. *Id.* at 1255–56. The Washington County Code permitted conditional uses if the Washington County Planning Board found, in part, "the proposed use is compatible with the surrounding area . . . ; the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare[;]" and "the conditional use will not be injurious to the use and enjoyment of other property in the surrounding area . . . nor substantially diminish and impair property values within the surrounding area." *Id.* at 1255. After multiple meetings, a majority of the members of the Quorum Court voted to deny the conditional use permit application, finding it failed to meet these three zoning requirements. *Id.* at 1256.

In determining whether the Quorum Court's decision was "consistent with the applicable local zoning requirements," the Eighth Circuit noted the Quorum Court analyzed the tower's placement and proximity to nearby residences and reviewed pictures and simulations of the areas at issue. *Id.* at 1259. The evidence before the Quorum Court supported the community members' concerns. The Eighth Circuit noted the Quorum Court's meeting minutes reflected it appropriately evaluated and considered the placement and proximity of the tower to nearby residences, in addition to other arguments and evidence about a detrimental impact on neighboring residents' unique views and property values. *Id.* The court concluded the Quorum Court had "substantial evidence on the record as a whole that the tower's scale, its proximity to residences, and the surrounding environment" to deny the conditional use permit application under the applicable zoning code. *Id.* at 1259–60; *see also Sprint Spectrum*, 578 F.3d at 733–34 (determining aesthetic concerns were a valid basis to deny permit for cell tower where the record showed the denial was supported by specific evidence regarding the location of the proposed tower, including testimony and letters from nearby residents citing the tower's "negative visual impact" on the neighborhood).

In *USCOC of Greater of Iowa, Inc. v. Zoning Board of Adjustment of the City of Des Moines*, the Eighth Circuit determined substantial evidence supported the denial of an exception and variance from the zoning ordinance to install a cellular tower. 465 F.3d at 823. The plaintiff challenged the Board's reliance on witnesses' testimony about concerns "for their safety, aesthetic, and property value." *Id.* at 822–23. At a hearing on the plaintiff's application, witnesses expressed concerns about ice forming on the tower and falling onto cars and persons below. *Id.* at 823. The witnesses' concerns were supported by evidence indicating the equipment building the plaintiff intended to construct below the tower would be hardened to protect it from falling ice. *Id.* The evidence also showed the proposed tower would be very close to condominiums and would leave residents with an unobstructed view of the tower because there was no screening between the tower and the condominiums. *Id.* Thus, the Board found the danger of falling ice and lack of screening precluded granting an exception under the zoning ordinance. *Id.* (recognizing granting an exception required the health, safety, and welfare of occupants in adjoining and surrounding properties to be adequately safeguarded and surrounding property values to not be diminished). Considering the record before the Board, the Eighth Circuit determined the Board's decision was supported by substantial evidence. *Id.*

In contrast, a district court has found there was not substantial evidence in the record where community members' generalized concerns regarding aesthetics and property values were not substantiated with other evidence in the record. In *USOC of Greater Iowa, Inc. v. City of Bellevue, Nebraska*, the City Council denied a conditional use permit application on a roll call vote. 279 F. Supp. 2d 1080, 1083 (D. Neb. 2003). Other than a statement in the minutes indicating the vote result, the City Council provided no other written decision. *See id.* at 1085. Though the court found the City violated the "in writing" requirement of the Act, it examined the record for substantial evidence to support the denial. *Id.* at 1085–86. At the public hearing, eight

22

residents testified in opposition to the proposed tower. *Id.* at 1086. The court noted the cell tower applicant provided a letter from a real property consultant detailing how the application met the applicable zoning ordinance and referenced a study done for another Nebraska City showing that property values were not affected by cell towers. *Id.* The City Council did not give any reasons for discounting the evidence that supported granting the conditional use permit. *Id.* Considering the record as a whole, the district court found the residents' generalized concerns regarding aesthetics and property values did not constitute substantial evidence to support denying the permit. *Id.* at 1086–87.

Turning to the record here, the Board of Adjustment's written reasons for denying the conditional use permit applications for the Winterset and Macksburg Sites include: 1) the "surrounding area and the values and quality of the neighborhood may be injured if this conditional use permit were approved;" 2) the "request does not promote the public health, safety and general welfare of the citizens of Madison County;" and 3) "the request is not consistent with the intent and purpose of the Madison County Comprehensive Plan and Zoning Ordinance." ECF No. 24-12 at 296; ECF No. 24-16 at 322. The question for the Court is whether these stated reasons are supported by substantial evidence in the written record. The Board of Adjustment's decision must comport with the applicable local law. *Cf. NE Colo. Cellular*, 764 F.3d at 936.

### 1. Surrounding area

As to the Surrounding Area condition, under § 14F(a)(i), the Board of Adjustment must find the proposed conditional use does not substantially injure the value and qualities of the area. In its reasons, the Board of Adjustment states: the "surrounding area and the values and quality of the neighborhood *may be injured.*" *See, e.g.*, ECF No. 24-12 at 296 (emphasis added).

The Madison County Zoning Ordinance only forecloses the grant of a conditional use permit where the Board of Adjustment finds there would be substantial injury to the value

and qualities of the area. *See, e.g.*, ECF No. 24-12 at 295 ("The value and qualities of the area . . . surrounding the conditional use are not substantially injured . . . ."). Finding a possibility of some amount of injury remains consistent with granting a conditional use permit application. Even so, considering the record as a whole, the Board of Adjustment's conclusion that the surrounding area and values and quality of the neighborhood "may be injured" is not supported by substantial evidence in the written record.

Like in *NE Colorado Cellular*, the Board of Adjustment received testimony and letters from community members opposing the cellular towers at the Winterset and Macksburg Sites. *Cf.* 764 F. 3d at 931, 937. The Supplemental Findings of Fact for both Sites state the Board of Adjustment "heard comment from residents expressing opposition to the request regarding property values, health concerns from the project, and negative impact on the roads during construction, as well as other issues and concerns." ECF No. 24-12 at 295; ECF No. 24-16 at 321. While the testimony of residents in *NE Colorado Cellular* was sufficient to show the proposed tower was not in harmony with the character of the area as required under the applicable ordinance, the Madison County Zoning Ordinance imposes different requirements. *Cf.* 764 F.3d at 931, 937. And, unlike in *Smith Communications* and *Zoning Board of Adjustment of Des Moines*, there was no other evidence before the Board of Adjustment to substantiate the community members' concerns.

At the Winterset Site hearing, property owners testified over a span of two hours about a range of concerns, including the potential devaluing of nearby property, negative effects on secondary roads, and health concerns. *See* Bd. of Adjustment Hr'g Tr., ECF No. 24-7. Regarding property values, the Zoning Administrator Report stated the Madison County Assessor indicated other cellular towers in Madison County had no effect on surrounding property values. ECF No. 24-6 at 115, 118. The Zoning Administrator reiterated that finding at the public hearing

on Cloud 1's application for the Winterset Site. Bd. of Adjustment Hr'g Tr. 8:9–14, ECF No. 24-7 at 148. No evidence was presented to rebut the Madison County Assessor's conclusion that existing cellular towers in Madison County had no effect on the value of surrounding properties. Cf. Bellevue, 278 F. Supp. 2d at 1086 (noting only evidence as to property values other than generalized testimony was real property consultant's reference to a study for another Nebraska city showing that property values were not affected); see also Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 496 (2d Cir. 1999) ("A few generalized concerns about a potential decrease in property values, . . . in light of . . . contradictory expert testimony, does not seem adequate to support a conclusion that the permits should be denied." (internal quotation marks and citation omitted)). Several community members continued to voice concerns regarding potential negative effects on property values. One community member indicated a realtor may be a more appropriate source to opine on cell towers' effect on surrounding property values. Bd. of Adjustment Hr'g Tr. 77:5–19, ECF No. 24-7 at 217. No such real estate testimony was presented, however. Cf. Bellevue, 279 F. Supp. 2d at 1086 (noting at hearing real property consultant referred to study done for different Nebraska city finding cell towers had no effect on property values). Unlike in Smith Communications, the record suggests the Board of Adjustment did not consider any evidence beyond community members' speculation about potential negative effects on property values. Cf. 785 F.3d at 1256; see also Zoning Bd. of Adjustment of Des Moines, 465 F.3d at 823.

Considering the Zoning Administrator Report finding no impact on property values and the lack of evidence to the contrary, the Court finds the record lacks substantial evidence to support denying Cloud 1's conditional use permit application for the Winterset Site under the Surrounding Area condition for potential injury to the value of the surrounding properties.

In its Supplemental Findings of Fact, the Board of Adjustment also cites negative impact

on roads during construction. ECF No. 24-12 at 295. The Board of Adjustment had a report by the Madison County Engineer indicating the proposed tower would have little, if any, effect on the secondary road system for the Winterset Site. ECF No. 24-6 at 122. The Zoning Administrator reiterated the conclusions of the County Engineer's report at the public hearing for the Winterset Site. Bd. of Adjustment Hr'g Tr. 8:21–9:9, ECF No. 24-7 at 148–49. Despite this report, multiple community members expressed concerns about roads. But no other evidence was introduced to rebut the County Engineer's finding that the tower would have little to no impact on roads. Again, nothing in the record suggests the Board of Adjustment considered any evidence regarding effects on the road beyond community members' speculation of harm. *Cf. Smith*, 785 F.3d at 1256; *Zoning Bd. of Adjustment of Des Moines*, 465 F.3d at 823. To the extent the Board of Adjustment considers concerns over road conditions under the Surrounding Area subsection of the Zoning Ordinance, the Court finds the record lacks substantial evidence to support denying Cloud 1's Winterset Site application on this ground.[3]

The Winterset Site record's shortcomings are heightened in the Macksburg Site record. The Macksburg Site public hearing was only nine minutes long and featured far less testimony from nearby landowners. *See* Bd. of Adjustment Hr'g Tr. 111:10–117:11, ECF No. 24-7 at 251–57. The Zoning Administrator Report for the Macksburg Site stated the Madison County Assessor indicated other cellular towers in Madison County had no effect on surrounding property values. ECF No. 24-5 at 79. One community member testified that the permit should be denied for all of the same reasons as the Winterset Site. This statement and the brief testimony from two others did not provide any specific information about the area

---

[3] Though the Board of Adjustment does not cite the "Infrastructure" subsection of the Zoning Ordinance in its written reasons, this does not change the Court's evaluation of the record. Given the lack of evidence regarding negative impacts on the roads and the County Engineer's evidence reporting otherwise, the Board of Adjustment's reason remains unsupported.

surrounding the Macksburg Site. The brief testimony was similarly unsupported in light of the Zoning Administrator's report regarding the lack of an effect on property values and the County Engineer's report of little to no impact on the secondary road systems for the Macksburg Site. *Cf. Smith*, 785 F.3d at 1256; *Zoning Bd. of Adjustment of Des Moines*, 465 F.3d at 822–23. Given the brevity of the public hearing and resulting overall lack of evidence about the conditions and characteristics of the area surrounding the Macksburg Site, the Court finds there is a lack of substantial evidence in the record to support the Board of Adjustment's decision to deny the Macksburg Site conditional use permit application under the Surrounding Areas subsection of the Zoning Ordinance.

The Court finds there is a lack of substantial evidence to support the Board of Adjustment's written reasons for denying the conditional use permit applications for the Winterset and Macksburg Sites under the Surrounding Area condition of the Zoning Ordinance.

### 2.    Intent of Ordinance

The Intent of Ordinance subsection requires the Board of Adjustment to find the conditional use "is consistent with the intent and purpose of [the Zoning Ordinance] to promote public health, safety, and general welfare." *See, e.g.*, ECF No. 24-12 at 295. The Board of Adjustment states the proposed cellular towers do "not promote the public health, safety and general welfare of the citizens of Madison County." *See, e.g.*, *id.* at 296.

The record does not contain substantial evidence to support the Board of Adjustment's Denials under the Intent of Ordinance condition. Turning to the written record as required, the Zoning Administrator Report for the Winterset Site indicates the conditional use permit application is consistent with the Madison County Zoning Ordinance and the Madison County Comprehensive Plan. *See* ECF No. 24-4 at 41; *cf. Bellevue*, 279 F. Supp. 2d at 1086 (noting that the City's planning staff recommended the conditional use permit application be granted because it complied with

the applicable zoning ordinance). The Zoning Administrator Report states no conflicts with the Ordinance have been identified. *See* ECF No. 24-4 at 40–41. Aside from a brief comment about lightning strikes, the only potential health or safety issues community members raised were in regards to radio frequency emissions. A significant portion of the letters to the Zoning Commission and the testimony at the Board of Adjustment hearings featured concerns about purported negative health effects of radio frequency emissions. *See, e.g.*, Bd. of Adjustment Hr'g Tr. 18:7–19:16, ECF No. 24-7 at 158–59; *id.* at 28:6–22; *id.* at 59:9–18; *id.* at 67:8–68:16. While such concerns may be directed to the Board of Adjustment, the Act specifically prohibits the Board of Adjustment from basing a denial of a conditional use permit on environmental effects of radio frequency emissions. *See* 47 U.S.C. § 332(c)(7)(B)(iv); *Telespectrum, Inc. v. Public Serv. Comm'n of Ky.*, 227 F.3d 414, 424 (6th Cir. 2000) (recognizing "concerns of health risks due to [radio frequency] emissions may not constitute substantial evidence in support of denial by statutory rule"). Though the Board of Adjustment does not explicitly reference health concerns in denying the applications for failing to "promote the public health, safety and general welfare," no other concerns fitting these categories are discernable from the hearing transcript and letters. Given that the Board of Adjustment is statutorily prohibited from basing its decision on environmental effects related to radio frequency emissions, and considering the record as a whole, the Court finds there is a lack of substantial evidence to support the Board of Adjustment's decision as to the Winterset Site under the Intent of Ordinance condition of the Madison County Zoning Ordinance.

As with the Surrounding Area condition, the shortcomings in the Winterset Site record as to the Intent of Ordinance condition are heightened in the Macksburg Site record. The written record for the Macksburg Site similarly demonstrates the Zoning Administrator Report found the conditional use permit is consistent with the Madison County Zoning Ordinance and the Madison County Comprehensive Plan. *See* ECF No. 24-4 at 38. As discussed above, the testimony in

opposition to the Macksburg Site was brief. One community member testified that the permit should be denied for all of the same reasons as the Winterset Site. This statement and the brief testimony from two other community members did not provide any specific information about how the proposed use at the Macksburg Site is inconsistent with the promotion of the public health, safety, and welfare. The brief testimony is similarly unsupported in light of the Zoning Administrator Report finding that the conditional use is consistent with the Madison County Zoning Ordinance. *Cf. Smith*, 785 F.3d at 1256; *Zoning Bd. of Adjustment of Des Moines*, 465 F.3d at 822–23. Given the brevity of the public hearing and resulting overall lack of evidence regarding the Macksburg Site, the Court finds there is a lack of substantial evidence in the record to support the Board of Adjustment's decision to deny the conditional use permit application under the Intent of Ordinance subsection of the Zoning Ordinance.

### 3.   Comprehensive Plan

The Comprehensive Plan subsection of the Madison County Zoning Ordinance requires the Board of Adjustment to find the conditional use "is not inconsistent with the comprehensive plan and land use policies of the County." *See, e.g.*, ECF No. 24-12 at 295. In its written reasons, the Board of Adjustment states, "the request is not consistent with the intent and purpose of the Madison County Comprehensive Plan and Zoning Ordinance." *Id.* at 296. The record before the Court does not include the Madison County Comprehensive Plan.

The record does not contain substantial evidence to support the Board of Adjustment's Denials under the Comprehensive Plan condition. Turning to the record for the Winterset Site, the Board of Adjustment identifies no particular facts and stated no reasons during the hearing to indicate why it concluded the conditional use at the Winterset Site was not consistent with the Madison County Comprehensive Plan. *Cf. Smith*, 785 F.3d at 1256; *Zoning Bd. of Adjustment of Des Moines*, 465 F.3d at 823. The Zoning Administrator Report found Cloud 1's request

"consistent with the Madison County Comprehensive Plan" and identified no conflicts. *See* ECF No. 24-6 at 117. The Zoning Administrator Report does not provide any specific information about the Madison County Comprehensive Plan. *See id.* At the hearing, community members spoke briefly about various other concerns, including WiFi interference, potential blinking lights, and the cellular tower's interference with use of an airstrip. No hearing participant provided photographs or additional evidence to support these generalized concerns. *Cf. Smith*, 785 F.3d at 1256; *Zoning Bd. of Adjustment of Des Moines*, 465 F.3d at 822–23. Regarding airstrip interference, Cloud 1's representative noted it had received approval from the Federal Aviation Administration for the Winterset Site. Bd. of Adjustment Hr'g Tr. 15:5–6, ECF No. 24-7 at 155; *see also* ECF No. 24-4 at 28–29 (FAA Determination of No Hazard to Air Navigation). To the extent these other various concerns fall under the ambit of the Madison County Comprehensive Plan, the unsubstantiated concerns about the Winterset Site do not provide substantial evidence to support finding Cloud 1's proposed conditional use was inconsistent with the Madison County Comprehensive Plan. Without any information as to the requirements of the Madison County Comprehensive Plan, the Court cannot find the Board of Adjustment's decision was supported by substantial evidence. As such, the record lacks substantial evidence to support the Board of Adjustment's denial of the Winterset Site under the Madison County Zoning Ordinance on this basis.

The Macksburg Site record is similarly insufficient as to the Comprehensive Plan condition. The written record for the Macksburg Site shows the Zoning Administrator Report found the conditional use permit is consistent with the Madison County Comprehensive Plan. *See* ECF No. 24-4 at 38. As discussed above, the testimony in opposition to the Macksburg Site was brief. Although one community member testified that the permit should be denied for all of the same reasons as the Winterset Site, this statement and the brief testimony from two other

30

community members did not indicate how the proposed use at the Macksburg Site was inconsistent with the Comprehensive Plan. The brief testimony was similarly unsupported in light of the Zoning Administrator's Staff Report regarding finding the conditional use consistent with the Madison County Comprehensive Plan. *Cf. Smith*, 785 F.3d at 1256; *Zoning Bd. of Adjustment of Des Moines*, 465 F.3d at 823. Given the brevity of the public hearing and resulting overall lack of evidence regarding the Mackburg Site, the Court finds there is a lack of substantial evidence in the record to support the Board of Adjustment's decision to deny the conditional use permit application under the Comprehensive Plan subsection of the Zoning Ordinance.

Considering the record as a whole, the Court finds there is a lack of substantial evidence in the record to support the Board of Adjustment's decisions denying conditional use permit applications for the Winterset and Macksburg Sites under the three proffered subsections of the Madison County Zoning Ordinance. Although the record demonstrates vocal local opposition to the proposed cellular towers, it does not contain substantial evidence supporting the rationale proffered by the Board of Adjustment. Cloud 1 is entitled to summary judgment on this ground.

## D.   Remedy

Cloud 1 argues the proper remedy is injunctive relief in the form of an Order directing the Board of Adjustment to grant Cloud 1's conditional use permit applications for the Winterset and Macksburg Sites. ECF No. 24-2 at 23. The Board of Adjustment argues if the Court finds it violated the Act, it should find such error harmless and remand the matter back to the Board of Adjustment. ECF No. 26-2 at 15–21.

The Act does not provide a specific remedy. However, the Act does provide for expedited relief. 47 U.S.C. § 332(c)(7)(B)(v) ("The court shall hear and decide such action on an expedited basis."). Courts vary on whether injunctive relief directing a locality to grant a conditional use permit or remand back to the locality is the proper remedy for violations of the Act. *See, e.g.*,

*Bellevue*, 279 F. Supp. 2d at 1088; *New Cingular Wireless LLC v. City of Brownsville, Tex.*, No. 1:19-cv-91, 2019 WL 8499340, at *6–12 (S.D. Tex. Dec. 20, 2019). The Eighth Circuit has not defined specific circumstances in which the proper remedy is injunctive relief over remand. However, the Eighth Circuit has indicated that a failure to timely provide written reasons does not require a district court to grant injunctive relief. *Smith*, 785 F.3d at 1258 (recognizing under the circumstances the plaintiff had adequate notice of the reasons for denial that were discussed over multiple meetings). Other courts reason remand is not proper where there is a lack of substantial evidence supporting the locality's decision. *See Tenn. ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 399 (6th Cir. 2005) ("[A]n injunction requiring the issuance of a permit ordinarily is a proper remedy when a governmental body has denied a permit without substantial evidence supporting the denial." (internal quotation marks and citation omitted)); *Cellco P'ship v. Town of Clifton Park, N.Y.*, 365 F. Supp. 3d 248, 265 (N.D.N.Y. 2019). This reasoning is reflected in *Bellevue*, where the district court held injunctive relief was proper when "remand would merely give the [local agency] a chance to find post-hoc evidence to support its denial." 279 F. Supp. 2d at 1088; *see also Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 21 (1st Cir. 2002) ("The statutory requirements that the board act within a reasonable period of time, and that the reviewing court hear and decide the action on an expedited basis, indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another." (internal quotation marks and citation omitted)).

If the Board of Adjustment had only violated the Act by providing untimely written reasons, remand may be appropriate. *Cf. Smith*, 785 F.3d at 1258. However, the Board of Adjustment's Denials are also not supported by substantial evidence in the written record. Remanding back to the Board of Adjustment would not serve any purpose other than to require

the Board of Adjustment to issue the same written reasons under a new timeline imposed by the Court's order. *Cf. Bellevue*, 279 F. Supp. 2d at 1088. The Board of Adjustment's written reasons would be accompanied by the same record and remain unsupported by substantial evidence. Considering the Act's provision for expedited relief, the Court finds the appropriate remedy is to grant Cloud 1's request for injunctive relief.

## V.  CONCLUSION

The Board of Adjustment failed to timely provide Cloud 1 with its written reasons for denying Cloud 1's conditional use permit applications for the Winterset and Macksburg Sites in violation of the Act. Further, there is a lack of substantial evidence in the written record to support the Board of Adjustment's decisions denying Cloud 1's conditional use permit applications under the Madison County Zoning Ordinance. The record reflects the community members' opposition to the proposed towers at the Winterset and Macksburg Sites. However, the Act requires the Court to determine whether the record provides substantial evidence to support the Board of Adjustment's decision under the applicable zoning ordinance. Because it does not, Cloud 1 is entitled to summary judgment on Count I. Because the record lacks the necessary substantial evidence to support the Board of Adjustment's Denials, and in the interest of the expedited relief afforded under the Act, the Court grant's Cloud 1's request for injunctive relief.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Cloud 1 Services, LLC's Motion for Summary Judgment on Count I, ECF No. 24, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Madison County is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant the Board of Adjustment of Madison County is directed to grant Plaintiff Cloud 1 Services, LLC's application for a conditional use permit at the Winterset Site. The Board of Adjustment shall grant the conditional use permit application within thirty days (30) of the date of this Order.

**IT IS FURTHER ORDERED** that Defendant the Board of Adjustment of Madison County is directed to grant Plaintiff Cloud 1 Services, LLC's application for a conditional use permit at the Macksburg Site. The Board of Adjustment shall grant the conditional use permit application within thirty days (30) of the date of this Order.

**IT IS SO ORDERED.**

Dated this 10th day of May, 2021.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE